IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

---

**GRACIE COOK, on behalf of the Wrongful
Death Beneficiaries and the Estate of WILLIE
P. ADKINS, Deceased, as Administratrix**                          **PLAINTIFF**

v.                                                               **CASE NO. 3:10CV018**

**GGNSC Ripley , LLC d/b/a Golden
Living Center Ripley; GGNSC Administrative
Services, LLC; GGNSC Clinical Services, LLC;
and Golden Gate National Senior Care, LLC**                       **DEFENDANTS**

---

## MEMORANDUM OPINION

This cause comes before the court on the motion **[10]** of all Defendants to compel arbitration.

Willie Adkins was admitted to Defendants' nursing home on April 13, 2007 after suffering a stroke. Ms. Adkins had a history of mental health issues and was institutionalized for most of her life.

Patricia Cook executed arbitration and admission agreements on behalf of her mother at the time Adkins was admitted. Alisha James, the Admissions Coordinator, stated that Cook expressly represented herself as Ms. Adkins' power of attorney. The arbitration agreement reflects that Cook's relationship to the resident is "POA/Daughter." No document granting Cook power of attorney exists; however, Cook did execute an appointment of health care agent.

Adkins passed away during her residency at the Defendants' facility. Plaintiff instigated the instant action on behalf of Adkins' estate alleging negligence, medical malpractice, and deviations from the standard of care owed to a nursing home resident. Defendants seek to

enforce the arbitration agreement.

Congress provided in the Federal Arbitration Act that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir.1998).

There is a two-step inquiry to determine whether a party should be compelled to arbitrate. *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). A court must determine if (1) the parties agreed to arbitrate the dispute; and whether (2) "any federal statute or policy renders the claims nonarbitrable." *Id*.

Whether the parties agreed to arbitration requires a further analysis: (1) the existence of a valid agreement to arbitrate; and (2) if the dispute in question falls within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Bailey*, 364 F.3d at 264. "A valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 37 (¶ 9) (Miss. 2007) (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)).

Plaintiff contends that a valid agreement does not exist because (1) Cook did not have the legal authority to waive Ms. Adkins' right to a trial; (2) no mutual assent existed because James did not sign on the line designated for a facility representative; and (3) James did not explain the term "arbitration" to Cook.

Plaintiff contends that Adkins is not bound by the arbitration agreement. Plaintiff's evidence supporting Cook's lack of binding authority is that no power of attorney exists. "The power of attorney must be a writing that (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs . . . ." *Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton*, 17 So. 3d 172, 177 (¶ 15) (Miss. Ct. App. 2009) (quoting Miss. Code Ann. § 87-3-7). There is no writing purporting to give Cook this all-inclusive power.

Defendants contend that even absent a power of attorney, Cook could legally bind Ms. Adkins to the arbitration agreement through a durable power of attorney for healthcare. Cook executed an "Appointment of Health Care Agent" apparently on behalf of her mother. The document purportedly gave Cook the authority to make health care decisions on her mother's behalf in the event that her mother was unable to do so. Adkins did not sign the document. It is probable that the omission of Adkins' signature was due to her incapacitation at the time of the agreement's execution in 2008. However, no proof has been presented that Adkins was incapacitated or that she was unable to write at this time. Further, even if the health care agent designation was valid, Adkins' admission to the facility was not contingent upon the signing of an arbitration agreement, as clearly stated in the terms. Thus, the arbitration agreement was not a

health care decision as defined by Mississippi law and Cook did not have the authority to bind Adkins to arbitration based on this theory. *Mississippi Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 218 (¶¶ 16-18) (Miss. 2008).

Defendant further asserts that Cook was acting as Adkins' health-care surrogate under the Uniform Health-Care Decisions Act. Miss. Code. Ann. § 41-41-201 *et seq*. (Rev. 2009). The Act provides that "[a] surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not readily available." Miss. Code Ann. § 41-41-211(1) (Rev. 2009). The Act defines a primary physician as the "physician designated by an individual or the individual's agent, guardian, or surrogate, to have primary responsibility for the individual's health care or, in the absence of a designation or if the designated physician is not reasonably available, a physician who undertakes the responsibility." Miss. Code Ann. § 41-41-203 (Rev. 2009).

Defendant claims that Adkins lacked capacity when she was admitted to the nursing facility, as evidenced by her medical records and Cook's own admission.

Defendant relies on Adkins' records during her hospitalization after suffering a stroke, immediately prior to her admission to the facility. These records reveal that hospital staff noted Adkins was completely unable to provide any history, that a review of symptoms was unattainable due to Adkins' lack of communicative skills, and that Adkins had been institutionalized for most of her life. Dr. John Averette, Adkins' consulting physician prior to her admission, stated that Adkins did not recognize his presence or interact in any way. Dr. Averette further explained that he was unable to obtain a review of systems because Adkins was

4

not interactive or communicative.

Further, Plaintiff's complaint states that Adkins "was at all times material to this lawsuit an adult, incompetent, resident of Ripley, Mississippi." Cook admitted at her deposition that her mother was incompetent, and had been institutionalized for over fifty years. Cook further stated that Adkins could not speak or write following her stroke.

There is sufficient evidence that Adkins lacked the capacity to enter an agreement on her own. However, surrogates may only make health-care decisions on behalf of an incapacitated person. An arbitration agreement is not considered to be a health-care decision when admission is not contingent upon its execution. *Hinyub*, 975 So. 2d at 218 (¶¶ 16-18). Thus, Cook did not have the statutory power to bind Adkins to the arbitration agreement.

Defendants further argue that Cook had the authority to enter into the arbitration agreement on Adkins' behalf under the principle of apparent authority. Defendants rely on the fact that Cook indicated to the admissions coordinator that she possessed the authority to execute the agreement. Apparent authority exists when the evidence demonstrates "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Foster v. Globe Life & Acc. Ins. Co.*, 808 F. Supp. 1281, 1287 (N.D. Miss. 1992) (citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1181 (Miss. 1990)). Defendants' theory fails on the first element as there is no evidence of any act or conduct on the part of Adkins, the principal, to indicate Cook's authority. In fact, Adkins was incapacitated and unable to acquiesce in Cook's actions. Cook could not bind Adkins through apparent authority.

Defendants further argue that Cook had the authority to bind Adkins because she was a

third-party beneficiary to the agreement under the principles of Mississippi contract law. "[N]on-signatories may be bound by an arbitration agreement if they are determined to be a third-party beneficiary." *Forest Hill Nursing Ctr. v. McFarlan*, 995 So. 2d 775, 783 (¶ 25) (Miss. Ct. App. 2008). The court must consider whether (1) the contract was entered into for the benefit of the decedent; (2) whether the promisee owed a legal obligation to the third party; and (3) whether that legal obligation connected the third party to the contract. *Id*. at 782 (¶ 21). The facts surrounding the entry into the agreement in this case are similar to those in *McFarlan*.[1] In *McFarlan*, a resident's granddaughter signed admission paperwork, including an arbitration agreement, as the responsible party. The Mississippi Court of Appeals found that McFarlan, the resident, received the benefits and services flowing from the admission agreement that specifically referenced the terms of her care. *Id*. at 783 (¶¶ 18-24). The court determined that McFarlan's care was the essential purpose of the agreement and that she was bound by all the terms of the contract, including the agreement to arbitrate any legal disputes related to the contract. *Id*.

The arbitration agreement at issue in this case became part of the admission agreement upon execution, as reflected by its express terms. Adkins did not sign the admission agreement, however, she is named as the resident to be admitted to the facility. The terms of the agreement refer to benefits and responsibilities of both the resident and the responsible party. Adkins' care

---

[1]The Mississippi Court of Appeals has distinguished, but not overruled *McFarlan*. *Monticello*, 17 So. 3d at 179 (¶ 24). The *Monticello* Court did not perform an analysis of contract law in determining whether the resident was a third party beneficiary. Instead, the court related the facts to *Hinyub*, as both cases involved the execution of an arbitration agreement subsequent to an admissions agreement without an arbitration provision. In doing so, the court applied law related to health-care surrogates in finding that the responsible party could not bind the resident because arbitration was not necessary for admission. *Id*. Similarly, in the instant case Adkins is not a third party beneficiary under statutory law, but is so under the principles of contract law.

6

was the essential purpose of the agreement. *Id*. at 783 (¶ 24). Thus, she is an intended third-party beneficiary of the agreement between the facility and Cook. As such, Adkins is bound by the terms of the contract, including the arbitration agreement. *Id*.

Plaintiff argues that even if Cook had the authority to bind Adkins, mutual assent did not exist between Cook and the facility because James signed on the line designated for a witness to the responsible party's signature instead of the line for an authorized representative. James was the admissions coordinator and as such, was an authorized representative of the facility. James signed directly below the terms of the agreement. The fact that her signature is simply in a different physical location on the contract is not enough evidence to prove a lack of mutual assent. *Cmty Care Ctr. of Vicksburg, LLC v. Mason*, 966 So. 2d 220, 228 (¶¶ 17-20) (Miss. Ct. App. 2007); *see also United Miss. Bank v. GMAC Mortg. Co.*, 615 So. 2d 1174, 1175 (Miss. 1993). There are no facts that show Cook did not believe that James was unauthorized. Further, the agreement would be valid on these grounds even if the facility did not bind itself to arbitration, as Cook's signature would be an offer and she did nothing to revoke the offer. *Byrd v. Simmons*, 5 So.3d 384 (¶¶ 15-19) (Miss. 2009). The facility incorporated the arbitration agreement into the admissions agreement and considered it to be part of the operating documents controlling Adkins' residency. The agreement did not lack mutual assent and this issue is without merit.

Finally, Plaintiff argues that the arbitration agreement is unenforceable due to unconscionability. In support, Plaintiff points to the fact that James did not explain the term "arbitration" to Cook.

"Mississippi law defines an unconscionable contract as 'one such as no man in his senses

7

and not under a delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Pride*, 341 F.Supp.2d at 622 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). Mississippi law provides for both procedural and substantive unconscionability. *York v. Georgia-Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F.Supp.2d 655, 657 (S.D. Miss. 2000)). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F.Supp. at 1278.

James did not explain the concept of arbitration to Cook; however, Cook never inquired. The agreement contained an explanation that by entering into an arbitration agreement, the parties give up and waive their constitutional right to have any claim decided in a court of law before a judge and jury. This explanation was written in large printed capital letter and in boldface. Immediately above the signature line was a admission that the signor read the agreement and fully understood its contents.

Further, "[i]t is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it." *Terminix Intern., Inc. v. Rice*, 904 So. 2d 1051, 1056 (Miss. 2004) (citing *McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 455 (Miss. 2004)). "A person is charged with knowing the contends of any document that he executes." *Id.* (quoting *Russell*, 826 So. 2d at 725). Cook does not dispute that she signed the

arbitration agreement. Plaintiff cannot now argue that Cook was unaware of the terms contained within the agreement at the time she executed the document. Further, Plaintiff claims that the facility intentionally buried the agreement within other documents and forced Cook to sign, but presents no evidence in support of this allegation. Plaintiff's argument that the agreement was procedurally unconscionable is without merit.

Plaintiff does not contend that the dispute falls outside the scope of the agreement. The court notes that the arbitration agreement language is broad and encompasses all disputes related to the admissions agreement or any service or health care provided by the facility to the resident. Thus, the present dispute need only "touch" matters covered by the agreement to be arbitrable. (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998)). The dispute in this case involves alleged negligent acts related to the health care provided to Adkins during her residency in the Defendants' facility. The court finds the arbitration agreement encompasses the present dispute.

The court then must determine whether any federal statute or policy renders the claims nonarbitrable. Plaintiff argues that the arbitration agreement is violative of public policy, relying on a law review article written by an arbitrator. The commentator claims that "[p]redispute mandatory arbitration agreements inclusive of wrongful death nursing home claims are simply wrong." Suzanne M. Scheller, *Arbitrating Wrongful Death Claims for Nursing Home Patients: What is Wrong With This Picture and How to Make it "More" Right*, 133 Penn St. L. Rev. 527, 529 (2008). The arbitration agreement in this case was not mandatory or required for admission into the facility, as discussed above. Further, the Mississippi Supreme Court has not adopted this view and this court declines to do so now.

9

The court finds that a valid agreement exists and that no federal statute or public policy renders this claim nonarbitrable. As such, the present claim is arbitrable and Defendants' motion **[10]** is **GRANTED.**

This the 14th day of April, 2011.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**